

Signed/Docketed
June 5, 2012

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 11-31982 MER |
| PAMELA SUE SEDILLO ) | |
| ) | Chapter 7 |
| Debtor. ) | |

## ORDER

This matter comes before the Court on the *Objection to Property Claimed as Exempt* (Docket No. 13) (the "Objection") filed by the Chapter 7 Trustee in this case, John Smiley (the "Trustee") and the *Response to the Trustee's Objection* (Docket No.19) filed by the Debtor, Pamela Sue Sedillo (the "Debtor"). The instant matter arose from the Debtor's claimed "tool of the trade" exemption for a motor vehicle used by the Debtor to transport foster children to necessary everyday activities. The issue before the Court is whether foster parenting may be classified as a "gainful occupation" under COLO. REV. STAT. § 13-54-102(1)(i), based upon the facts of this case. The Court has considered the evidence and the legal arguments presented by the parties at the hearing held April 24, 2012, and hereby makes the following findings of fact and conclusions of law.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B), as it concerns the administration of the estate, and allowance or disallowance of exemptions from the estate.

## BACKGROUND FACTS

The Debtor filed for relief under Chapter 7 of the Bankruptcy Code on September, 15, 2011 (the "Petition Date"). Prior to her petition, the Debtor was, and continues to be, engaged in caring for minor children as a foster parent. Her duties in this role include transporting the foster children to school, medical appointments, social activities and other destinations. The size of her household fluctuates from month to month, but she cares for her one biological child, her two adopted children, and between two and four foster children at any given time.

On the Petition Date, the Debtor was caring for two foster children approved and placed with her through a county foster care program. Through the program, the Debtor receives approximately $3,434 per month in reimbursement funds to defray the cost of

caring for foster children.[1] There is no evidence in the record indicating the reimbursement funds the Debtor receives in connection with the foster care program constitute compensation. It is undisputed the reimbursement funds are not income and the funds are not included in the Debtor's taxable income.[2] The Debtor testified she is not reimbursed for mileage incurred for transporting the foster children. The Debtor generates gross income in the approximate amount of $1,782.54 per month through her employment as a cosmetologist.

On her initial Schedule C dated September 15, 2011, the Debtor claimed a tool of the trade exemption pursuant to COLO. REV. STAT. § 13-54-102(1)(i), in the amount of $9,175[3] for her only vehicle, a 2003 Nissan Murano.[4] The Debtor indicates the vehicle is used to transport foster children and is necessary for the Debtor's duties as a foster parent.[5] On October 24, 2011, the Trustee timely filed an Objection disputing this claimed exemption.

The Debtor argues her role parenting foster children is a "gainful occupation" and, therefore, her motor vehicle is a tool of the trade within the scope of the exemption statute. The Debtor asserts her vehicle is a tool used and kept for the purpose of carrying on the "business of caring for minor children (*i.e.*, being a foster parent) . . . ."[6] While the Debtor admits she is involved in the foster child program to provide the children with a normal home and not to make a profit, she characterizes caring for her foster children as her business or occupation. She argues occupations falling within the exemption statute do not need to generate profit or reportable income to be considered "gainful" occupations, nor does "gainful" require a taxable event.

By contrast, the Trustee argues no legal authority supports the Debtor's proposition that foster parenting (or parenting in general) is a gainful occupation qualifying a motor vehicle used to transport children for a tool of the trade exemption. The thrust of the Trustee's argument is that foster parenting is not a "gainful occupation"

---

[1] *See* Debtor's Exhibit H, ¶ 5. The Debtor conceded IRS regulations define reimbursement funds received in connection with foster care as nontaxable. Debtor's Response to the Objection (Docket No. 19), at ¶ 4.

[2] *See* Debtor's Exhibit H, ¶ 7.

[3] The Debtor's Amended Schedules B and C (Docket No. 25) later reduced the asserted value of the vehicle to $7,250. *Compare* Debtor's Exhibits A and E.

[4] The Debtor did not claim a motor vehicle exemption pursuant to COLO. REV. STAT. § 13-54-102(1)(j).

[5] *See* Debtor's Exhibits F and G, describing a foster parent's duty to provide transportation under the Jefferson County foster care program.

[6] Debtor's Exhibit C.

because the Debtor does not earn a profit from her role as a foster parent. By analogy, the Trustee argues a parent receiving child support may not claim parenting is a gainful occupation. In addition, it is undisputed the Debtor works as a cosmetologist to earn income. As a foster parent, she is not an employee of the State, and pays no taxes on the reimbursement funds received. The Trustee also points out the Debtor could claim a regular motor vehicle exemption for the vehicle at issue, rather than claiming a vehicle exemption to which no other parent is entitled.

## DISCUSSION

**A.     The Colorado "tool of the trade" exemption as applied to motor vehicles.**

COLO. REV. STAT. § 13-54-102 exempts various categories of property from levy and sale under a writ of attachment or a writ of execution. COLO. REV. STAT. § 13-54-102(1)(i) provides a specific exemption for:

> [t]he stock in trade, supplies, fixtures, maps, machines, tools, electronics, equipment, books and business materials of any debtor *used and kept for the purpose of carrying on any gainful occupation* in the aggregate value of twenty thousand dollars; except that exempt property described in this paragraph (i) may not also be claimed as exempt pursuant to paragraph (j) of this subsection (1).[7]

With respect to the "tools of the trade" exemption, the Court has previously explained:

> the purpose of the Bankruptcy Code and the Colorado exemption statutes are to provide a debtor with a "fresh start." The "fresh start" includes a discharge of debts and a means by which a debtor can continue on in a trade or profession—i.e., preservation of essential "stock in trade, supplies, fixtures, maps, machines, tools, equipment, books, and business materials . . ." *See, e.g., In re Keyworth*, 47 B.R. 966, 974 (D.Colo. 1985).[8]

Colorado exemption laws are to be liberally construed in favor of debtors.[9] Based upon the facts of a specific case, a debtor may claim a motor vehicle as exempt under the tool of the trade exemption versus the standard motor vehicle exemption so

---

[7] COLO. REV. STAT. § 13-54-102(1)(i) (emphasis added).

[8] *In re Larson*, 260 B.R. 174, 189 (Bankr. D. Colo. 2001).

[9] COLO. CONST. ART. XVIII, § 1 (providing "the general assembly shall pass liberal homestead and exemption laws.")

long as the vehicle qualifies for the exemption.[10] A debtor qualifies for the tool of the trade exemption if the debtor's motor vehicle is used and kept for the purpose of carrying on any gainful occupation.[11] The Court recognizes there are several prior decisions from this district permitting debtors to claim a "tool of the trade" exemption for a motor vehicle.

Following the year 2000 amendments to Colorado's exemption statute, in *In re Van Winkle*, Judge Donald E. Cordova held a debtor was entitled to claim an exemption for his truck as a tool of the trade because the "truck is maintained and used in the Debtor's business and is impractical for any other purpose. The Debtor could not carry on his occupation as a contract truck driver without the Kenworth truck."[12] However, not all motor vehicles fall within the scope of this exemption. As noted by Judge A. Bruce Campbell of this Court, "[t]he mere use of a vehicle for transportation to and from work is not "use for carrying on a gainful occupation," as intended by the Colorado legislature in the exemption of section" 13–54–102(1)(i).[13]

In *Black*, Judge Campbell analyzed the issue of use of a motor vehicle for carrying on a gainful occupation on a continuum. On one end, he placed the facts of *Van Winkle*. A truck driver using his rig in his business may claim his truck as a tool of the trade. On the other end, he provided the example of a lawyer hauling his briefcase in his BMW as a use of a motor vehicle which would not qualify for the exemption.[14] Judge Campbell went on to hold a self-employed building contractor was entitled to claim a tool of the trade exemption for his pick-up truck. The debtor's use of the pick-up truck was close enough to the trucker's end of the continuum and far enough from the lawyer's end of the continuum to allow the vehicle to qualify for the exemption.[15]

Similarly, in the case of *In re Sackett*, Judge Sidney B. Brooks of this Court determined a debtor's car was a tool of the trade in a case where the debtor was a nurse and health care consultant who was required to travel as part of her employment for a company.[16] Judge Brooks examined whether the debtor's vehicle might be

---

[10] *See In re Van Winkle*, 265 B.R. 247, 251-52 (Bankr. D. Colo. 2002) (stating "there will certainly be instances where a specialized motor vehicle functions more like equipment essential to a debtor's occupation than a typical 'motor vehicle.'"); *In re Black*, 280 B.R. 258 (Bankr. D. Colo. 2002).

[11] COLO. REV. STAT. § 13-54-102(1)(i); *see also Van Winkle*, 265 B.R. at 248.

[12] *Van Winkle*, 265 B.R. at 253.

[13] *In re Black*, 280 B.R. at 260.

[14] *Id.* (following Judge Cordova's reasoning in *In re Van Winkle*).

[15] *Id.*

[16] *In re Sackett*, 394 B.R. 544, 546-8 (Bankr. D. Colo. 2008).

considered a "tool of the trade" under the applicable exemption statute by addressing the following five questions:

    1. Is the vehicle "kept for the purpose of carrying on any gainful occupation?"

    2. Is there a suitable alternative available to the debtor for the purpose of carrying on the debtor's gainful occupation?

    3. Is there evidence of "actual use" of the vehicle by a debtor for his or her gainful occupation?

    4. What is the debtor's prior employment history, present employment situation, and future prospects of employment?

    5. Is a "fresh start" attainable without the motor vehicle?[17]

Thus, under *Sackett*, the issue turns on whether the vehicle is used conventionally for personal use or used for the purpose of carrying on any gainful occupation or business.[18]

**B.    Based upon the facts of this case, the Debtor's role as a foster parent does not qualify as a "gainful occupation" under the Colorado exemption statute.**

    In the case at hand and as a matter of first impression, this Court must address the plain language of the exemption statute because the Debtor puts the phrase "gainful occupation" squarely at issue by arguing foster parenting is a gainful occupation under COLO. REV. STAT. § 13-54-102(1)(i). The Trustee argues the Debtor's claim of exemption for her motor vehicle does not meet the definition of the statute. The Court agrees.

    Neither the Bankruptcy Code nor the Colorado statute define the term "gainful occupation." As a matter of statutory interpretation, this Court begins by examining the plain language of the statute.[19] When "the language of a statute is clear in its application, the general rule is that we are bound by it."[20]

---

[17] *Id.* at 548.

[18] *Id.* at 545; *see also* COLO. REV. STAT. § 13-54-102(1)(i).

[19] *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-341 (1997) (stating "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.").

[20] *Robbins v. Chronister*, 402 F.3d 1047, 1050 (10th Cir. 2005) (citing and quoting *Hubbard v. United States*, 514 U.S. 695, 703 (1995) ("In the ordinary case, absent any indication that doing so would ... yield patent absurdity, our obligation is to apply the statute as Congress wrote it.")).

In construing a Colorado exemption statute, the Court must look to the Colorado rules of statutory construction.[21] "When interpreting a statute, our primary objective is to effectuate the intent of the General Assembly by looking at the plain meaning of the language used, considered within the context of the statute as a whole."[22] "Where the statutory language is clear and unambiguous, we do not resort to legislative history or other rules of statutory construction."[23] Moreover, "[t]he absence of a statutory definition does not create ambiguity if, because the undefined phrase is one of common usage, a court can discern its usual and ordinary meaning."[24]

Here, the Debtor separates the phrase "gainful occupation" into two isolated words rather than considering the phrase and the context of the statute as a whole. The Debtor argues the word "gainful" is broader than the term "profitable" in the context of the exemption statute, and provides a list of seven definitions for "gainful" of which three include a variation of the word profit.[25] The Debtor also submitted three Webster's definitions of "occupation": 1) The principal activity in your life that you do for money; 2) Any activity that occupies a person's attention; and 3) That which occupies or engages the time and attention; the principal business of one's life; vocation; employment; calling; trade.[26]

Contrary to the Debtor's definitions, the Court relies on the following dictionary definitions to establish the plain meaning of the words "gainful" and "occupation" within the context of the statute:

"Gainful"
- "Earning a profit; profitable; lucrative."[27]
- "Productive of gain or profit; profitable, advantageous" and

---

[21] *See, e.g, In re Brown*, 387 B.R. 611, 612 n.1 (D. Colo. 2008).

[22] *Dillabaugh v. Ellerton*, 259 P.3d 550, 552 (Colo. Ct. App. 2011) (citing *Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010)). In *Dillabaugh*, the Colorado Court of Appeals examined the plain meaning of the phrase "retirement plan" as used in the Colorado exemption statute, COLO. REV. STAT. § 13-54-102(1)(s).

[23] *Id.* (citing *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010)).

[24] *Id.* (citing *Cohen v. State*, 593 P.2d 957, 960 (Colo. 1979); *Ray v. Indus. Claim Appeals Office*, 124 P.3d 891, 893 (Colo. App. 2005), *aff'd*, 145 P.3d 661 (Colo. 2006)).

[25] Debtor's Exhibit C ¶ 12. The other definitions presented include such terms as "helpful," "beneficial," "fertile," and "worthwhile."

[26] *See* Debtor's Exhibit C ¶ 13. The Debtor indicated these definitions came from Webster's Dictionary, but provided no specific citation as to which edition. The Court's independent review of the "online" version of Webster's presents a different definition than that referenced by the Debtor. For the reasons stated below, this difference is not critical to the Court's analysis of the issue.

[27] THE AMERICAN HERITAGE DICTIONARY 537 (New College ed. 1981).

- "[l]eading to pecuniary gain; lucrative, remunerative."[28]
- "productive of gain: PROFITABLE <gainful employment>"[29]

"Occupation"
- "An activity or pursuit in which a person is engaged; esp., a person's usual or principal work or business."[30]
- "an activity that serves as one's regular source of livelihood; profession; vocation."[31]
- "the state of having one's time or attention occupied; what a person is engaged in; employment, business; work, toil" and "[a] particular action or course of action in which a person is engaged, esp. habitually; a particular job or profession; a particular pursuit or activity."[32]
- "an activity in which one engages" and "the principal business of one's life."[33]

"Gainful Employment"
- "[w]ork that a person can pursue and perform for money."[34]

Based on the foregoing definitions from multiple authorities, and in the context of COLO. REV. STAT. § 13-54-102(1)(i), the Court determines the plain meaning of the word "gainful" is profitable (or at least capable of being profitable), and the plain meaning of the word "occupation" is principal work or business.

The Debtor contends her vehicle is used and kept to carry on her "business" – parenting her foster children. However, the Debtor testified she serves as a foster parent to provide children with a normal home, not to earn a profit. The Debtor receives *reimbursement funds*, not compensation for her role as a foster parent, thus profit is not an issue. The Court finds unconvincing the Debtor's argument the tool of

---

[28] OXFORD ENGLISH DICTIONARY ¶¶ 1a-b (2nd ed. 1989), *available at* http://www.oed.com/view/Entry/76070?redirectedFrom=gainful#eid.

[29] MERRIAM-WEBSTER DICTIONARY, *available at* http://merriam-webster.com/dictionary/gainful.

[30] BLACK'S LAW DICTIONARY 1184 (9th ed. 2009).

[31] THE AMERICAN HERITAGE DICTIONARY 908 (New College ed. 1981).

[32] OXFORD ENGLISH DICTIONARY ¶ 4a-b (3rd ed. 2004), *available at* http://www.oed.com/view/Entry/130181?redirectedFrom=occupation#eid.

[33] MERRIAM-WEBSTER DICTIONARY ¶ 1a-b, *available at* http://merriam-webster.com/dictionary/occupation.

[34] BLACK'S LAW DICTIONARY 604 (9th ed. 2009).

the trade exemption should be allowed for her vehicle because the foster care reimbursement funds account for over 50% of her monthly income as set forth on her Schedule I.[35] No matter how you phrase it, reimbursement does not equal profit.

Additionally, in a further effort to avoid the "profit" issue, the Debtor urges the Court to read "gainful occupation" as engaging in any activity that is *beneficial* in some way. According to the Debtor, a foster parent engages in a gainful occupation by providing care, love, and guidance to foster children, through ensuring the children's educational, medical, mental, and physical needs are satisfied.

With respect to the need to transport her foster children, the transportation expectation of the foster care program is only one of many parental responsibilities, with most responsibilities identical to those of any person parenting biological or adopted children.[36] This responsibility is no greater than the responsibility of any parent who drives their children to school, the doctor's office and other locations. As a parent, transporting children is not part of a business, but part of managing a household. Transporting children from activity to activity as a parent is conventionally a personal use, and the Colorado General Assembly considered a family's need for transportation and enacted a motor vehicle exemption to address that need.[37]

Since there is an alternative available, there is no reason to expand "gainful occupation" to include parenting so debtors can shield motor vehicles used conventionally for personal use from creditors. Thus, the Court finds there is no distinction between parenting a foster child, a biological child and an adopted child for the purpose of determining the applicability of the "tool of the trade" exemption statute to the facts of this case.[38]

Taking the Debtor's argument to the illogical extreme, if the Debtor were allowed to claim this exemption on her motor vehicle, then any parent or primary caretaker for a household using a vehicle to transport children to school, doctor appointments or any other necessary extracurricular activities could claim the same exemption. To include parenting as a business for the purpose of this exemption would open the door to endless claims of exemption for anything and everything a parent uses in connection with raising their children. This result would run afoul the intent of the General Assembly to provide an exemption for debtors to protect implements used in their businesses from creditors.

---

[35] *See* Debtor's Exhibit I.

[36] *See* Debtor's Exhibit F.

[37] *See* COLO. REV. STAT. § 13-54-102(1)(j).

[38] The Court notes the Debtor did not argue that parenting her biological child or her two adopted children is a gainful occupation that would subject her vehicle to the exemption.

The Court recognizes raising foster children requires substantial time and effort and the Court commends the Debtor's efforts in this regard, but the Court cannot conclude the provision of foster parenting may be classified as a "gainful occupation" for the purpose of this exemption statute.[39] The Debtor's position renders foster parenting analogous to employment as a primary caretaker of a child. It is not the same circumstance, and the Court declines to expand "gainful occupation" in such a manner. Thus, under the plain meaning of COLO. REV. STAT. § 13-54-102(1)(i), the Court determines the Debtor's role as a foster parent does not qualify for the claimed exemption.

## CONCLUSION

As Judge Brooks explained in connection with the first *Sackett* element, "the facts and evidence before the Court must demonstrate that the Vehicle is a material and essential feature to Debtor's gainful occupation. That is, a debtor's **business** could not be conducted without the vehicle."[40] Under the reasoning in *Sackett*, "*[t]he vehicle must match the job.*"[41] In order to effectuate the intent of the General Assembly within the context of the statute's plain language, the Court determines the phrase "gainful occupation" means the principal work or business for which a person receives compensation or profit, not reimbursement.

For the above reasons

IT IS ORDERED the Trustee's Objection to Property Claimed as Exempt is sustained, and the Debtor's claimed exemption for her 2003 Nissan Murano motor vehicle under COLO. REV. STAT. § 13-54-102(1)(i) is denied, without prejudice for the Debtor to file an amended statement of exemption, if appropriate.

Dated June 5, 2012

BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge

---

[39] The Court notes there may be some instances when providing child care may qualify as a gainful occupation (i.e., employment as a nanny or at a child care facility).

[40] *Id.* (citing *In re Black*, 280 B.R. at 260) (emphasis added).

[41] *Id.*, at 549.